IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN REED-SEEGER, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 14-0287 |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA; PHILADELPHIA | : | |
| FEDERATION OF TEACHERS; | : | |
| THE SCHOOL REFORM COMMISSION; | : | |
| DR. WILLIAM HITE; LEROY NUNERY; | : | |
| ESTELLE G. MATTHEWS; and | : | |
| KATHY MURPHY, | : | |
| | : | |
| Defendants | : | |

MEMORANDUM

YOHN, J.                                                                                                  December 30, 2014

Plaintiff Dawn Reed-Seeger, a Philadelphia public school counselor, was suspended without pay for ten months in 2012 while facing charges—that were ultimately dismissed—for driving under the influence. Following her reinstatement and the unsuccessful resolution of a dispute over back pay through the grievance process, Reed-Seeger filed suit against the School District of Philadelphia ("SDP"), the Philadelphia Federation of Teachers ("PFT"), the School Reform Commission ("SRC"), SDP Superintendent William Hite, former acting SDP Superintendent Leroy Nunery, SDP Chief Talent and Development Officer Estelle Matthews, and George Washington High School Principal Kathy Murphy.[1]  Reed-Seeger claims that the manner in which the disciplinary process was carried out and the suspension that resulted constitute breach of contract on the part of the SDP and SRC, breach of the duty of fair representation on the part of PFT, an equal protection violation on the part of Hite, Matthews,

---

[1] Reed-Seeger sued John Does #1-5 as well, but all claims against those fictitiously-named defendants were dismissed by agreement of the parties on August 5, 2014. *See* Doc. No. 18.

and Nunery, and both due process and First Amendment violations on the part of Hite, Matthews, Nunery, and Murphy. All of the defendants except PFT have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6), but because plaintiff has adequately pleaded each of the counts at issue here, I will deny the motion and allow the case to proceed.[2]

## I.   Factual Background and Procedural History[3]

Reed-Seeger began working for the SDP as a middle school teacher in 1997, and in 2003, she became a counselor at George Washington High School ("GWHS"). On November 27, 2011, Reed-Seeger was arrested for driving under the influence ("DUI"). At the time, Reed-Seeger was not required by the Pennsylvania Department of Education to report the arrest to officials at SDP,[4] and she did not do so. But GWHS principal Kathy Murphy heard about the arrest and, on November 29, 2011, informed various SDP employees and officials about Reed-Seeger's DUI charge.

On December 21, 2011,[5] Reed-Seeger observed Lionel Peal—a social worker responsible for the care of a disabled GWHS student—enter the school and attempt to retrieve keys from the student while Peal appeared to be intoxicated. Later that day, Reed-Seeger filed a child abuse report about the incident with the Montgomery County Department of Human Services.

On January 4, 2012, Reed-Seeger received notice of a hearing to be held on January 10, 2012, to address her DUI arrest. Reed-Seeger's union, PFT, provided her with a representative for the hearing. On January 10, 2012, a hearing was held before investigator Michael Jackson

---

[2] PFT filed an answer to the complaint and a list of affirmative defenses (Doc. No. 22), but not a motion to dismiss.

[3] This account accepts as true all factual allegations made in the amended complaint (Doc. No. 4). *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[4] Reed-Seeger was obliged to notify SDP upon being arrested for any crime enumerated in 24 P.S. § 1-111, which in November 2011 did not include a first-time DUI offense. *See* 24 Pa. Stat. Ann. § 1-111 (2011).

[5] Plaintiff dates the event to December 21, 2012, *see* Compl. 7, but read in context this must merely be a typo.

and hearing officer Richard Cecchine.  At the hearing, Reed-Seeger asked for a copy of any SDP policies or procedures for reporting arrests and was told that no such policies or procedures existed.  Reed-Seeger also produced more than 80 letters of support from students, educators, and community members.  Two days later, on January 12, 2012, Reed-Seeger was notified that she would be suspended without pay as of January 16, 2012.

After receiving the notice of suspension, Reed-Seeger turned to PFT grievance representative Barbara Gordon, who informed plaintiff that a grievance could not be filed until the DUI charge was resolved.  On July 30, 2012, the DUI charge was dismissed, and Reed-Seeger informed Gordon about the development, with the understanding that Gordon would file a grievance regarding Reed-Seeger's suspension and requesting reinstatement with back pay.  On October 12, 2012, Reed-Seeger received notice from her attorney that the time for appeal of the DUI's dismissal had expired, and plaintiff passed that information to Gordon as well.  Later in October, Gordon confirmed to Reed-Seeger that a formal grievance had been filed on her behalf.  In November 2012, Reed-Seeger's suspension was lifted without back pay, and on November 13, 2012, she returned to work as a counselor, now at Abraham Lincoln High School.

On April 5, 2013, Reed-Seeger checked in with Gordon on the status of the grievance process, and on April 13, 2013, Reed-Seeger contacted Gordon's office seeking a copy of the grievance itself.  Reed-Seeger was told that no grievance had been filed on her behalf, but on April 18, 2013, she received a copy of a grievance form that had been prepared and submitted by Gordon on April 17, 2013.  On June 6, 2013, Gordon informed Plaintiff that her grievance had been denied.

On December 20, 2013, Reed-Seeger filed suit in the Court of Common Pleas of Philadelphia County.  Defendants filed a notice of removal, pursuant to 28 U.S.C. § 1441(a), on

January 16, 2014.  Defendants SDP, SRC, Hite, Nunery, Matthews, and Murphy filed a motion to dismiss the claims against them under Fed R. Civ. P. 12(b)(6) on August 22, 2014.  Reed-Seeger filed a brief in response on September 5, 2014.

## II. Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The complaint must contain sufficient factual matter to be plausible on its face.  *See id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient.  *Id.*  Therefore, to survive a motion to dismiss, a plaintiff must allege facts sufficient to have "nudged [his or her] claims across the line from conceivable to plausible."  *Twombly,* 550 U.S. at 570.

## III. Discussion

Four of Reed-Seeger's five claims are currently at issue: (1) her common law breach of contract claim against SDP and SRC; (2) her equal protection claim under 42 U.S.C. § 1983 against Hite, Matthews, and Nunery; (3) her due process claim under § 1983 against Hite,

Matthews, Nunery, and Murphy; and (4) her First Amendment claim, also under § 1983, against Hite, Matthews, Nunery, and Murphy. I will address each of these claims in turn.

### A. Breach of Contract Claim

Reed-Seeger argues that, in suspending her without just cause from January 16 to November 13, 2012, SRC and SDP breached the collective bargaining agreement ("CBA") then in place between SDP and PFT. Though Reed-Seeger was not a party to the CBA, she asserts that she was a third-party intended beneficiary and therefore has standing to sue for breach of contract. Defendants do not dispute that point, so I will assume it to be true for the purposes of this motion.

As both parties acknowledge, Pennsylvania law dictates that in general "an aggrieved public employee has no right to sue his or her employer for breach of a collective bargaining agreement." *Runski v. Am. Fed'n of State, Cnty. & Mun. Employees, Local 2500*, 598 A.2d 347, 350 (Pa. Commw. Ct. 1991), *aff'd sub nom. Runski v. AFSCME, Local 2500*, 642 A.2d 466 (Pa. 1994). Both parties further concur that "an exception to this general rule" can be found only "'where an employee alleges and shows by *specific facts* that an employer actively participated in the union's bad faith or conspired with the union to deny the employee his rights under the collective bargaining agreement.'" *Id.* (quoting *Reisinger v. Com., Dep't of Corr.*, 568 A.2d 1357, 1360 (Pa. Commw. Ct. 1990)); *see also Garzella v. Borough of Dunmore*, 62 A.3d 486, 494 (Pa. Commw. Ct. 2013), *appeal denied*, 72 A.3d 605 (Pa. 2013).

Here, plaintiff alleges that "SDP and SRC, by and through its employees, representatives, and/or assigns . . . actively participated in Defendant PFT's bad faith . . . or conspired or colluded with Defendant PFT to deny Plaintiff her rights under the [CBA]." Compl. 18. Reed-Seeger further pleads that "[u]pon information and belief, Defendants SDP, SRC, Hite, Matthews,

5

Murphy, [and] Nunery . . . , individually and collectively, actively participated in Defendant PFT's bad faith or conspired with the PFT to deny Plaintiff her rights under the [CBA], as set forth herein." Compl. 15. Plaintiff has therefore made the threshold allegation of conspiracy or collusion necessary to survive a motion to dismiss. Whether she can prove the same by a showing of specific facts is a question for future stages of litigation. I will therefore deny defendants' motion to dismiss with respect to the breach of contract claim.

### B. Section 1983 Claims

Reed-Seeger brings the remaining three claims at issue under 42 U.S.C. § 1983, which provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. The statute "is not itself a source of substantive rights," but rather provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). Here, the rights asserted are constitutional. First, Reed-Seeger claims that defendants treated her differently than similarly situated individuals on the basis of race, in violation of the Equal Protection Clause of the Fourteenth Amendment. Second, plaintiff claims that defendants suspended her without following proper procedures, in violation of the Due Process Clause of the Fourteenth Amendment. Third, Reed-Seeger claims that defendants retaliated against her for filing a child abuse report, in violation of the First Amendment. The equal protection claim is brought against only Hite, Matthews, and Nunery; the due process and First Amendment claims are brought against Murphy as well.

#### 1. Equal Protection Claim

Reed-Seeger was suspended from her position at GWHS without pay from January 16 to November 13, 2012, while DUI charges were pending against her. A white woman, she asserts

that she "was treated differently on the basis of her race" because "[o]n at least two separate occasions prior to and following Plaintiff's suspension without pay," defendants have "allowed male African American employees who had each been charged with the reportable offense of sexually assaulting a student to continue their employment with the District, uninterrupted, pending the outcome of those criminal charges." Compl. 17, 9.

Defendants do not address whether Reed-Seeger has pled the elements necessary to make out a *prima facie* claim under the Equal Protection Clause, but focus instead on the requirements of a suit under § 1983.[6]  Specifically, they argue that Reed-Seeger does not link the defendants themselves to the alleged discrimination, so the claim must fail against these individuals (Hite, Matthews, and Nunery) even if its underlying merits are sound.  On this point, defendants cite, among other cases, *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990).  There, two female employees of the Philadelphia Police Department filed suit against two of their supervisors under § 1983, alleging gender discrimination.  *Id.* at 1471-72.  Affirming the district court, the Third Circuit held that the two defendants could have been found liable under § 1983 because of evidence that one defendant "personally participated" in the conduct at issue and "condoned the actions" of fellow employees, as well as evidence that the other defendant "was aware of the problems . . . but did nothing to stop them." *Id.* at 1478-79.

Here, Reed-Seeger alleges that Hite, Matthews, and Nunery each participated in her unequal treatment.  As the amended complaint states:

> [T]he individual Defendants, Dr. William Hite, Estelle G. Matthews . . . [and] Leroy D. Nunery, II . . . violated her rights to equal protection under the 14th Amendment when Plaintiff, a

---

[6] I note in passing that plaintiff does set out such a *prima facie* case when she alleges that she was treated differently from similarly situated SDP employees on the basis of race.  "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.  They must demonstrate that they receiv[ed] different treatment from that received by other individuals similarly situated." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citations and quotation marks omitted).

7

> Caucasian, was suspended without pay in connection with an arrest of which Plaintiff was not required to notify Defendants, while similarly situated non-Caucasian employees have been administratively transferred pending the outcome of far more serious criminal charges.

Compl. 2.  Likewise, Reed-Seeger alleges that "Defendants Hite [and] Nunery . . . suspended and kept Plaintiff on disciplinary suspension without pay, while permitting other non-Caucasian employees facing reportable offenses to be reassigned within the district."  Compl. 10.  Defendants respond that, according to the amended complaint, the allegedly discriminatory suspension took place in January 2012, while Hite did not become superintendent until June 2012.  But plaintiff counters that Hite was in position to correct her wrongful suspension from at least June to September 2012, and that Hite and the other defendants participated in discriminatory behavior "as recently as March 2013."  Pl.'s Resp. 19.  Such an allegation more than satisfies the requirements that the Third Circuit set in *Andrews*.  Plaintiff has therefore pleaded the personal involvement of each defendant sufficiently to survive a motion to dismiss.

    2.    *Due Process Claim*

Plaintiff next claims that Hite, Matthews, Nunery, and Murphy violated her due process rights under the Fourteenth Amendment by "pursuing charges against Plaintiff, failing to provide Plaintiff with an explanation of the evidence and the opportunity to be heard and by using the *Loudermill* hearing to obtain a result Defendants could not obtain at a post-termination hearing because the charges against Plaintiff did not constitute just cause for termination."  Compl. 19.  As was the case in the equal protection context, "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207); *see also Iqbal*, 556

8

U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Thus, to make out a due process claim cognizable under § 1983 against Hite, Matthews, Nunery, and Murphy, Reed-Seeger must allege that those four individuals were each personally involved in the events at issue.

The pleadings meet this burden. Reed-Seeger alleges that "Murphy knew the DUI offense was not reportable, but allowed or pursued disciplinary charges against Plaintiff." Compl. 7. Plaintiff further asserts that "[i]n complete disregard of Plaintiff's contractual and due process rights, Defendants Hite [and] Nunery . . . suspended and kept Plaintiff on disciplinary suspension without pay . . . ." Compl. 10. Similarly, plaintiff alleges that "Hite, Matthews, Murphy, [and] Nunery . . . improperly utilized the pre-termination *Loudermill* hearing to suspend Plaintiff without pay from her position as school counselor." Compl. 19. Reed-Seeger therefore pleaded the involvement of each defendant in the alleged violation of her due process rights.

Defendants also challenge whether plaintiff can make out any due process claim on the facts alleged. In *Cleveland Board of Education v. Loudermill*, the Supreme Court held that in terms of a pre-termination disciplinary hearing, due process requires that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. 532, 546 (1985); *see also Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986) (applying *Loudermill* procedural protections to hearings prior to suspension without pay). Defendants note that Reed-Seeger admits she received written notice of the hearing "to address the November 27, 2011 arrest for DUI" and that she took the opportunity to submit "more than 80 letters from students, teachers, staff, and community members which spoke positively about Plaintiff and her

contributions to the District and community" at the January 10, 2012 hearing. *See* Compl. 8-9; Defs.' Mot. 14-15. But *Loudermill* also requires that an employee be given "an explanation of the employer's evidence," and Reed-Seeger alleges that "Defendants offered no explanation of its evidence" at the hearing. Compl. 9. Defendants' argument that "plaintiff acknowledges that she was suspended without pay because of her arrest for DUI," Defs.' Mot. 15, is therefore inapposite: the question under *Loudermill* is what kind of process plaintiff went through at the hearing itself, and plaintiff has sufficiently alleged that the process she faced was deficient. I will therefore deny the motion to dismiss with respect to the due process claim.

   *3.*   *First Amendment Claim*

Finally, Reed-Seeger alleges that her DUI charge was only a pretext for her suspension: she asserts that, in truth, she was suspended in retaliation for filing a report with the Montgomery County Department of Human Services regarding Lionel Peal's actions on December 21, 2011. Plaintiff further argues that filing this report amounted to constitutionally-protected speech. Consequently, Reed-Seeger claims that Hite, Matthews, Nunery, and Murphy are liable under § 1983 for violating her First Amendment rights under color of state law.

 Again, the motion to dismiss argues that plaintiff failed to tie each individual defendant to the claimed violation of her constitutional rights. But Reed-Seeger alleges that "[b]y subjecting Plaintiff to false charges based on her protected speech, Defendants Hite, Matthews, Murphy, [and] Nunery . . . violated Plaintiff's right as guaranteed by the First Amendment to the U.S. Constitution." Compl. 21. Likewise, Reed-Seeger pleaded that "[e]ach such Defendant knew or should have known that charging Plaintiff with discipline and suspending Plaintiff without pay following her complaint of child abuse was illegal and that their actions were not

reasonable under the law as established at the time they took or authorized said actions." *Id.* Therefore, the amended complaint adequately sets out the involvement of each defendant.

Defendants also argue that no First Amendment violation could have occurred because plaintiff was required to file the abuse report under Pennsylvania's mandated reporting law, 23 Pa. Cons. Stat. Ann. § 6311. On this point, defendants cite *Garcetti v. Ceballos*, which held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). But defendants do not address the Supreme Court's more recent opinion in *Lane v. Franks*, which held that "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." 134 S. Ct. 2369, 2378 (2014). There is no dispute over whether Reed-Seeger's report was truthful or compelled (albeit by statute, not subpoena). For defendants to be correct that Reed-Seeger's filing of the report was not protected speech, then, the act of filing abuse reports must fall within the scope of a high school counselor's ordinary job responsibilities, and "[w]hether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Dougherty v. Sch. Dist. of Philadelphia*, No. 13-3868, 2014 WL 6600421, at *6 (3d Cir. Nov. 21, 2014) (quoting *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007), *abrogated on other grounds by Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488 (2011)). Such a question should not be determined at this early stage. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3d Cir. 2000) (holding that a mixed question of law and fact "is generally best left to the trier of fact"). I will therefore deny defendants' motion to dismiss with respect to the First Amendment claim.

**IV.     Conclusion**

For the reasons set forth above, I will deny defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) in its entirety.  An appropriate order follows.